UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS BACON,                              No. 19-cv-11023(NLH)

        Petitioner,

    v.                                         OPINION

DAVID ORTIZ,

        Respondent.

APPEARANCES:

Thomas Bacon
91231-083
Federal Correctional Institution
Fort Dix N.J. Unit 5802
P.O. Box 2000, Fort Dix, N.J. 08640

        *Petitioner, Pro se*

Craig Carpenito, United States Attorney
Kristin L. Vassallo, Assistant United States Attorney
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

        *Attorneys for Respondent*

HILLMAN, District Judge

        Petitioner Thomas Bacon, a federal inmate at FCI Fort Dix,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. §

2241.  Petition, ECF No. 1.  Petitioner challenges the results

of a disciplinary hearing which assessed a loss of forty days of

good conduct time (GCT), the forfeiture of fifty-four days of

non-vested good conduct (NVGCT) time, and other sanctions for possession of a cell phone.  Respondent David Ortiz, the Fort Dix Warden, opposes the Petition, and attaches the Declaration of Fort Dix Legal Assistant Corrie Dobovich.  Answer, ECF No. 7. Petitioner did not file a reply.  For the reasons stated herein, the Petition will be denied.

I.   BACKGROUND

On March 13, 2018, the United States District Court for the Eastern District of Virginia sentenced Petitioner to an aggregate sentence of 212 months in prison comprising consecutive 120- and 92-month sentences for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 7-3, pp. 2-5.  Assuming all good conduct time, as of this Petition, Petitioner's projected release date was October 21, 2032.[1]  Id.

On July 12, 2018, Fort Dix staff issued an incident report charging Petitioner with possession of a hazardous tool, in violation of BOP Disciplinary Code 108; use of any drug (Code 112); and destroying or disposing of any item during a search (Code 115).  ECF No. 7-3, p. 15.  Specifically, the incident report alleged that on July 12, 2018 at 3:10 a.m., Corrections Officer Trought ordered Petitioner to submit to a pat search

---

[1] According to the BOP website, the projected release date is now April 20, 2030.

2

after observing Petitioner exit a small, second floor bathroom stall with a set of white headphones hidden inside of a toilet paper roll.  Id. at ¶ 11.  Upon Trought's second request, Petitioner fled down a hallway.  Id.

As Trought pursued Petitioner, Trought observed a black cell phone falling out of Petitioner's boxers.  Id.  Trought pursued Petitioner to an empty first floor laundry room, where Petitioner quickly exited and submitted to a pat search.  Id. As Trought searched Petitioner, Petitioner said, "I did not mean to cause so much trouble I only had K2 and I swallowed the rest of it."  Id.  Another officer searched the laundry room and found a black Samsung cell phone behind a dryer.  Id.

Trought prepared the incident report on July 12 (the same day as the incident) at about 5:05 a.m., and the report was delivered to Petitioner at 2:15 p.m.  Id. at ¶¶ 14-16. According to the incident report, Petitioner was advised of his rights, and declined to make any comment or call any witnesses or a staff representative.  Id. at ¶¶ 23-24.  The investigator, Lieutenant Gallop, deemed the allegations valid and referred the incident report for a hearing.  Id. at ¶¶ 26-27.

On July 13, 2018, the Unit Discipline Committee (UDC) convened for an initial hearing and, based on the severity of the charged offenses, referred the incident report to a Discipline Hearing Officer (DHO).  Id.  Petitioner signed a

3

notice listing his rights at the DHO hearing (BP-S293.052)
including, as relevant here: (1) the right to have a written
copy of the charges at least 24 hours before the hearing; (2)
the right to have a staff member represent him; (3) the right to
call witnesses and present documentary evidence; (4) the right
to make a statement or remain silent; and (5) the right to
appeal.  ECF No. 7-3 at p. 19.  Also that day, Petitioner signed
a Notice of Discipline Hearing Before the DHO (BP-S294.052)
listing five violations: possessing a hazardous tool (Code 108),
use of drugs/alcohol (112), destroy/dispose item-search (115),
refusing to obey an order (307), and interfering with taking
count (321).[2]  Id. at p. 21.  Petitioner declined to have a staff
representative or witness at the hearing.  Id.

The DHO hearing took place on July 19, 2018 before hearing
officer Emmert (the "DHO"), who again advised Petitioner of his
rights to have a witness and staff representative present.  Id.
at p. 23, ¶¶ II(A), III(C)(1).  In addition to the incident
report, the DHO also considered a July 12, 2018 memorandum from
C.O. Hillman, another officer who responded to the incident, a
July 12 chain of custody form for the cell phone, and a photo of
the phone.  Id. at ¶ III(D), pp. 26-28.

_____

[2] This is the only document where the last two, Codes 307 and
321, appear.  They are not mentioned in the subsequent DHO
findings, and neither party discusses them.  Accordingly, they
are not discussed further here.

4

The DHO issued a report on August 20, 2018, delivered to
Petitioner on September 12, 2018.  Id. at ¶ IX.  The report
found that the incident report did not support the charges for
use of drugs or alcohol (Code 112) or disposing of evidence
during a search (115).  Id. at ¶ V.  However, the DHO sustained
the charge of possession of a hazardous tool (108).  Id.

The DHO relied primarily upon the initial incident report.
The DHO also considered Petitioner's statement, in which
Petitioner admitted running, but explained that he "ran because
[he] was scared" and "never had a cell phone."  Id. at ¶ III(B).
The DHO determined that Petitioner's denial was not credible.
Id. at ¶ V.

The DHO imposed a sanction of 40 days' disallowance of GCT,
54 days' forfeiture of NVGCT, and 6 months' loss of commissary,
email, phone, and visiting privileges through January 18, 2019.
Id. at ¶ VI.  The DHO justified the sanctions as necessary "to
comply with the mandatory sanctions requirement, ...deter future
misconduct," and demonstrate the seriousness of the offense to
Petitioner and other inmates.  Id. at ¶ VII.

In September 2018, Petitioner filed a BP-10 Regional
Administrative Remedy Appeal.  Id. at p. 7.  In the appeal,
Petitioner alleged that he was leaving the bathroom wearing only
a tank top and boxer shorts when he "was confronted by an
officer wielding a black object in his hand," which Petitioner

believed to be a taser, causing Petitioner to fear bodily harm. Id.  Petitioner acknowledged running to the laundry room, but denied entering it.  Id.  Petitioner denied having a cell phone, arguing that he could not have outrun an officer with a cell phone in his boxers.  Id. at p. 8.

On October 26, 2018, the Regional Director affirmed the DHO's "reasonably determined" decision.  Id. at p. 9.  The Regional Director found "no due process concerns or deviations from policy," and found that the DHO report "contains sufficient notice of the allegations[.]"  Id.

On November 21, 2018, Petitioner filed a Central Office Administrative Appeal.  Id. at p. 11.  Petitioner "renew[ed] his argument advanced to the DHO and Regional Office...that he was never in possession of a cell phone."  Id.  Petitioner also contended that the DHO failed to consider Petitioner's statement "in conjunction with...Tedesco's statement that provided exculpatory evidence," that the evidence was insufficient under Third Circuit standards, and that Petitioner has no obligation to keep common areas free of contraband.  Id.

On February 24, 2019, the National Inmate Appeals Administrator affirmed the DHO and Regional Director.  Id. at p. 13.  The Administrator found that the DHO decision "was based upon the evidence detailed in Section V of the DHO report," and "reasonable and supported by the evidence."  Id.  The

Administrator further found that Petitioner's due process rights were upheld and the sanctions commensurate to the severity of the offense.  Id.  Respondent acknowledges that Petitioner has properly exhausted all available administrative appeals.  ECF No. 7, pp. 6-7.

Petitioner now challenges those determinations, arguing essentially what he did in his administrative appeals: that there was insufficient evidence to conclude that the cell phone found in the laundry room belonged to Petitioner.  Petitioner also alleges violations of his Fourth Amendment rights, arguing that Officer Trought had no reason to request that Petitioner submit to a search.  Finally, Petitioner also alleges that his Fourteenth Amendment rights were violated when he was not afforded the opportunity to present a defense at the hearing.

Respondent's Answer argues that the DHO hearing comported with due process, that the decision met the appropriate evidentiary standard, and that the imposed sanction was appropriate.  Petitioner did not reply.

II.  ANALYSIS

A.  DHO Hearing Procedures

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments prohibiting deprivation of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556

(1974); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Wilwording v.
Swenson</u>, 404 U.S. 249 (1971).  Such protections are, however,
"subject to restrictions imposed by the nature of the regime to
which [prisoners] have been lawfully committed... .  In sum,
there must be mutual accommodation between institutional needs
and objectives and the provisions of the Constitution that are
of general application."  <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may
arise from either of two sources: the Due Process Clause itself
or from state or federal law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S.
460, 466 (1983); <u>Asquith v. Department of Corrections</u>, 186 F.3d
407, 409 (3d Cir. 1999).  Where the government has created a
right to good time credits, and has recognized that a prisoner's
misconduct authorizes deprivation of the right to good time
credits as a sanction, "the prisoner's interest has real
substance and is sufficiently embraced within Fourteenth
Amendment 'liberty' to entitle him to those minimum procedures
appropriate under the circumstances and required by the Due
Process Clause to insure that the state-created right is not
arbitrarily abrogated."  <u>Wolff</u>, 418 U.S. at 557.

"Federal prisoners serving a term of imprisonment of more
than one year have a statutory right to receive credit toward
their sentence for good conduct."  <u>Denny v. Schultz</u>, 708 F.3d

8

140, 143-44 (3d Cir. 2013).  Thus, good conduct credit may only be taken from an inmate if due process protections are observed.

Petitioner argues that the DHO hearing did not provide due process because: (1) Petitioner did not receive a copy of the incident report with the UDC sections completed; (2) Petitioner was not afforded a forensic analysis of the cell phone; (3) the DHO denied Petitioner's request to call CO Trought as a witness; (4) Trought lacked probable cause to search Petitioner; and (5) the DHO was biased at the hearing.

Officials must provide several due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied upon and the reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body.  See Crosby v. Piazza, 465 F. App'x 168, 171-72 (3d Cir. 2012) (per curiam) (citing Wolff, 418 U.S. at 563-71).  However, Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.  Id. at 539.

Here, as Respondent argues, the DHO hearing met the Wolff requirements.  Petitioner received notice of the charges on July 12, 2018 at 2:15 p.m., the same day the incident report was

written.  ECF No. 7-3, p. 15.  The next day, as evidenced by his signature on both documents, Petitioner received a DHO Hearing Notice and a Notice of Inmate Rights.  Id. at pp. 19, 21. Petitioner waived his right to have witnesses or a staff representative present.  Id. at p. 21.

Six days later, on July 19, 2018, Petitioner attended the DHO hearing, where he was again read his rights and verbally waived his right to call witnesses or request a staff representative.  Id. at p. 23, ¶¶ II(A), III(C)(1).  Based on the evidence in the record – the incident report, Petitioner's statement, an officer memorandum, and photos of the cell phone – the DHO determined that Petitioner possessed the cell phone and imposed sanctions accordingly.  Id. at pp. 24-25, ¶¶ V-VII.

Petitioner's arguments are unpersuasive.  First, Petitioner was not denied due process when he did not receive a copy of the incident report or "referrals or recommendations to DHO...per [28 C.F.R. § 541.7(e)]."  ECF No. 1-1, ¶ 2.  As an initial matter, due process does not require an initial UDC hearing or report.  Obiegbu v. Werlinger, 488 F. App'x 585, 586 (3d Cir. 2012).  Rather, "Wolff only requires that an inmate receive written notice of the charges at least 24 hours before a hearing.  Wolff does not require the issuance of an incident report within 24 hours of the incident, and due process is not violated absent a showing of prejudice."  Gross, 720 F. App'x at

10

96.   Here, there was no prejudice because Petitioner received
notice of the DHO hearing (the only substantive factfinding
hearing) and his rights there well before the hearing took
place.

Moreover, 28 C.F.R. § 541.7(e) provides, as relevant here,
that for charges of "a Greatest or High severity prohibited
act," which includes possession of a cell phone, "the UDC will
automatically refer the incident report to the DHO for further
review."  BOP Program Statement 5270.09, "Inmate Discipline
Program" (Eff. Aug. 1, 2011) at § 2(f) ("Clarify possession of a
cellular telephone or other electronic communications device is
a Greatest severity level prohibited act."); Abdullah v.
Stewart, No. 17-CV-2195, 2018 WL 1832311, at *3 (D. Md. Apr. 17,
2018) ("The prohibited act—possession of a hazardous tool (a
cell phone)—is among the greatest severity level offenses.").

Second, Petitioner argues that his due process rights were
violated because the DHO did not permit Petitioner to call CO
Trought as a witness.  A DHO's refusal to call adverse witnesses
comports with Wolff, and does not deprive an inmate of due
process.  Kenney v. Lewisburg, 640 F. App'x 136, 139 (3d Cir.
2016); see also Guerrero v. Recktenwald, 542 F. App'x 161, 164
(3d Cir. 2013) ("[T]he prison administration is not required to
allow a prisoner to cross-examine and confront witnesses in a
disciplinary hearing and has the discretion to limit the hearing

11

and the witnesses called to protect institutional security.").
But more importantly, nothing in the record supports
Petitioner's contention that the DHO refused such a request.  To
the contrary, the record demonstrates that Petitioner was
advised of his right to call witnesses, and declined – verbally
and in writing – to do so.  ECF No. 7-3, p. 17 at ¶ 25, p. 21,
p. 23 at ¶¶ II(A), III(C)(1).

Third, Petitioner argues that he was deprived due process
when prison officials did not perform a forensic investigation
of the cell phone found in the laundry room to confirm that it
was not his.  This argument is also unavailing.

"Wolff does not...guarantee prisoners the unfettered right
to call any witness or present any evidence they wish regardless
of its relevance or necessity." Manfredi v. United States, 12-
CV-1905, 2012 WL 5880343, at *6 (D.N.J. Nov. 20, 2012)
(collecting cases); see also Spence v. Farrier, 807 F.2d 753,
756 (8th Cir. 1986) (although inmates are permitted to present a
defense, "[s]tates need not implement all possible procedural
safeguards against erroneous deprivation of liberty when
utilizing results of scientific testing devices in accusatory
proceedings").  "[A] prisoner also has no protected due process
right in either obtaining outside scientific or laboratory
testing of evidence to be used against him." Whyte v. Snyder-
Norris, No. 0:16-CV-1-HRW, 2016 WL 4069874, at *8 (E.D. Ky. July

12

28, 2016), aff'd, No. 16-6379, 2017 WL 4071133 (6th Cir. June 27, 2017) (rejecting argument that cell phone discovered in the woods should have been fingerprinted, opened, and examined to determine if the phone numbers called from it "coincided" with the numbers on petitioner's approved call list) (citing Wolff, 418 U.S. at 556-57); see also Cato v. Ives, No. 12-CV-193, 2013 WL 1856101, at *5 (E. D. Ky. Apr. 30, 2013) (rejecting assertion that an incriminating letter should have been analyzed by handwriting and fingerprint experts); Outlaw v. Wilson, 2007 WL 1295815, at *2 (N. D. Ind. Apr. 30, 2007) (inmate had no right to require creation of favorable evidence in the form of handwriting analysis or lie detector test results).

However, "[a]lthough prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits.'" Jacquet v. Warden Fort Dix FCI, 707 F. App'x 124, 128 (3d Cir. 2017) (quoting Burns v. Pa. Dep't of Corr., 642 F.3d 163, 173 (3d Cir. 2011).  Thus, courts "typically require prison officials to determine whether there are legitimate penological reasons to deny the prisoner access to the evidence requested. Jacquet, 707 F. App'x at 128 (remanding for further analysis because "the Government has presented no evidence whatsoever

detailing its rationale for preventing [petitioner] from obtaining hair-testing evidence.").

The BOP has, on at least two other documented recent occasions, performed such analysis on phones found at FCI Fort Dix as part of their investigations, including on a phone found on an inmate's person.  See Arreola-Albarran v. Ortiz, No. CV 17-4500 (RBK), 2019 WL 3887552, at *1 (D.N.J. Aug. 19, 2019) (phone found on an inmate's person, but the phone did not belong to that inmate); Gonzalez v. Hollingsworth, No. 15-2993, 2016 WL 1732376, at *1 (D.N.J. May 2, 2016) (phone found in an inmate's cell).  It is unclear from this record why Fort Dix officials did not perform such an analysis here.

Implicit in the Jacquet panel's holding, however, is that determining whether the BOP's refusal to analyze evidence is justified by "legitimate penological reasons" requires a request and denial.  For example, in a similar action in which a petitioner challenged the BOP's refusal to allow him to examine the contents of a SIM card, the Third Circuit affirmed the district court's findings that the petitioner "did not make a timely request to anyone directly involved in the disciplinary proceedings" because he first raised the issue on an administrative appeal, "too late for any prison official at the hearing level to respond appropriately to the request." Donahue v. Grondolsky, 398 F. App'x 767, 771 (3d Cir. 2010) ("At a

14

minimum, [the petitioner] should have brought his concern about the contents of the SIM card to the attention of the DHO at his disciplinary hearing..., and he should have asked for a postponement of the hearing.").

Here, the only evidence of any request is Petitioner's memorandum of law contending that at the DHO hearing, he "asked for a forensic phone search to find out if the phone could be linked" to him.  ECF No. 1-3, p. 2.  However, that request is not present anywhere in the record, including either administrative appeal.  Without any request, there could not be any refusal, and without any refusal, there cannot be an unreasonable refusal.

Regardless, even a timely request would have been immaterial because the <u>possession</u> of the contraband, not its ownership, was the only relevant consideration.  <u>Donahue</u>, 398 F. App'x. at 770.  Thus, even if this Petitioner had timely made a request to analyze the subject cell phone, and even if it had been revealed to belong to someone other than Petitioner, there would nevertheless have been a reasonable basis to find Petitioner guilty and sanction him accordingly.

Fourth, Petitioner argues that his Fourth Amendment rights were violated because officers lacked probable cause to ask him to submit to a pat search.  ECF No. 1-3 at p. 2; ECF 1-1 at ¶ 11.  As Respondent argues, however, pat searches which do not go

15

beyond the scope needed to support legitimate penological purposes of prison security do not constitute Fourth Amendment violations.  Banks v. Rozum, 639 F. App'x 778, 782 (3d Cir. 2016).

Additionally, as Respondent argues, in the context of criminal proceedings, the remedy for unconstitutional searches is normally exclusion of the results of that search — the "fruit of the poisonous tree" doctrine.  However, that doctrine does not apply to prison disciplinary hearings.  Landor v. Bledsoe, No. 1:12-CV-1331, 2012 WL 6011588, at *10 (M.D. Pa. Nov. 6, 2012), report and recommendation adopted, No. 1:12-CV-1331, 2012 WL 6005702 (M.D. Pa. Dec. 3, 2012); accord Dillhunt v. Theriault, 9:07-CV-0412, 2009 WL 4985477, at *15 (N.D.N .Y. Dec. 15, 2009) (the "fruit of the poisonous tree doctrine" has no applicability to intercepted mail introduced in prison disciplinary hearings).

Moreover, even if it did apply, and even if the headphones observed by CO Trought did not constitute the initial probable cause for a pat search, Petitioner's flight constituted an intervening, intentional act providing an independent source of probable cause.  United States v. Boxley, No. CR 17-177, 2019 WL 6828393, at *9 (W.D. Pa. Dec. 13, 2019) ("Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly

16

suggestive of such.") (citing <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (2000)).

Finally, Petitioner also alleges that the DHO showed bias during the hearing.  ECF No. 1-3, p. 1.  "[T]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge."  <u>Speight v. Minor</u>, 245 F. App'x 213, 217 (3d Cir. 2007) (quoting <u>Meyers v. Alldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974)).  General claims of bias, like those asserted by Petitioner here, are "not sufficient to indicate the type of 'direct personal or otherwise substantial involvement...in the circumstances underlying the charge' that shows the DHO's impartiality."  <u>Lewis v. Canaan</u>, 664 F. App'x 153, 156 (3d Cir. 2016) (quoting <u>Meyers</u>, 492 F.2d at 306 (3d Cir. 1974)).  Accordingly, the DHO hearing did not violate Petitioner's due process rights.

B.  <u>Sufficiency of Evidence</u>

Petitioner also argues that the DHO's decision was not supported by sufficient evidence because the responding officer found the cell phone behind a dryer in the inmate laundry room rather than on Petitioner's person.  ECF No. 1-3, pp. 14-16. Petitioner argues, in other words, that there was insufficient evidence to prove Petitioner's constructive possession of the

phone, or alternatively that a constructive possession theory is itself violative of due process.

"[A] prison disciplinary determination comports with due process if it is based on 'some evidence' in the record." Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014) (quoting Hill, 472 U.S. at 454–56). "This standard is minimal. It does not require a reviewing court to exam the entire record, independently assess the credibility of witnesses, or even weigh the evidence." Cardona, 551 F. App'x 633, 637. "...[D]ue process is not violated absent a showing of prejudice." Gross v. Warden, USP Canaan, 720 F. App'x 94, 96 (3d Cir. 2017).

"Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." Id. Thus, "the 'some evidence' requirement is violated only when a disciplinary sanction is rendered without any factual basis." Visintine v. Zickefoose, No. 11-CV-4678, 2014 WL 4388609, at *14 (D.N.J. Sept. 5, 2014) (granting summary judgment to defendant where hearing officer was provided with witness testimony implicating plaintiff in the altercation and found witness testimony more credible than Plaintiff's account) (emphasis in original) (citing Cardona, 551 F. App'x at 637-38).

18

Here, as Respondent argues, the DHO's decision met the
"some evidence" standard.  The DHO, relying upon the incident
report of an eyewitness officer, a memorandum from another
officer, and photos of the phone, found that an officer observed
Petitioner in a bathroom during the 3 a.m. count with a set of
white headphones inside of a toilet paper roll.  ECF No. 7-3, p.
24 at ¶ V.  Rather than submit to a pat search, Petitioner fled,
at which time an officer observed a black cell phone falling out
of Petitioner's boxers.  Id.  Officers pursued Petitioner to a
laundry room Petitioner entered and quickly existed, thereafter
finding the cell phone behind a dryer.  Id.

Petitioner argued in his Central Appeal, and argues here,
that Officer Tedesco "never reported witnessing [Petitioner] in
possession of a cell phone."  ECF No. 7-3, p. 12.  But the
initial incident report, which described Tedesco's actions, was
authored by Officer Trought, who was working with Tedesco that
evening and who describes Tedesco's actions in the report.
There is no separate report by Tedesco anywhere in the record.
Even if it did exist, however, and even if it said precisely
what Petitioner claims – that Tedesco never personally observed
the phone in Petitioner's possession – that would still be
insufficient to overturn the DHO's findings under the "some
evidence" standard given the other evidence discussed above.

Trought's observation also refutes another argument highlighted by Petitioner in his administrative appeals: that Petitioner could not have had a phone because he was wearing only a tank top and boxers.  ECF No. 7-3, p. 8.  Accepting this argument would require this Court to usurp the DHO's credibility determination, which is inappropriate under the "some evidence" standard.  But even accepting Petitioner's reasoning, the record indicates that Trought observed Petitioner grab a phone "that was falling out of his boxers as he ran."  ECF No. 7-3, p. 15 at ¶ 11.  In other words, the record confirms Petitioner's theory, but also his guilt.

Petitioner also argues that there is insufficient evidence of constructive possession and/or that a finding of constructive possession is insufficient to meet the "some evidence" standard. Contrary to either argument, evidence of constructive possession can, and does here, satisfy the "some evidence" standard, particularly where, as here, Petitioner the was the last inmate observed in the common area where the contraband was found.  See Solomon v. Warden, FCI Fairton, 506 F. App'x 147, 149 (3d Cir. 2012) (affirming district court's findings of "some evidence" of constructive possession where cell phone was found in petitioner's work area, where he was one of just three orderlies with access); Donahue, 398 F. App'x at 772-73 (3d Cir. 2010) (rejecting argument that the petitioner did not constructively

20

possess SIM card where numerous inmates in his dorm had access to the area where contraband was found because the SIM card was taped to back of the petitioner's clothes drawer, which he was responsible for); Berroa v. Hollingsworth, No. CV-16-2298, 2019 WL 1450788, at *4 (D.N.J. Apr. 2, 2019) (finding some evidence in the record where inmate was the only one in the stall immediately before cell phone was found).  Accordingly, this argument is also unavailing.

    C.   Sanctions Imposed

    Finally, to the extent that Petitioner also argues that the sanctions imposed were disproportionate to the severity of the offense, they are within the permissible range of available sanctions for a violation of Code 108.  See 28 C.F.R. § 541.3; see also Shelton v. Jordan, 613 F. App'x 134, 135 (3d Cir. 2015); Singleton v. White, No. 3:18-CV-1265, 2019 WL 1245817, at *2 (M.D. Pa. Feb. 15, 2019), report and recommendation adopted, No. CV 3:18-1265, 2019 WL 1242440 (M.D. Pa. Mar. 18, 2019) (sanction of loss of 41 days good conduct time, 378 days of non-vested good conduct time, 30 days disciplinary segregation, and 6 months loss of commissary for possession of cell phone was "well within" DHO discretion pursuant to 28 C.F.R. § 541.3). Accordingly, this argument is also unavailing, and the Petition will be dismissed.

21

III. <u>CONCLUSION</u>

　　　For the reasons above, the petition for writ of habeas

corpus will be denied.

　　　An appropriate order follows.


Dated: <u>March 25, 2021</u>　　　　　<u>　s/ Noel L. Hillman　</u>
At Camden, New Jersey　　　　　NOEL L. HILLMAN, U.S.D.J.